IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALBERTO RIVERA, | ) | |
| | ) | CASE NO. 1:13-CV-2162 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Alberto Rivera's ("Plaintiff" or "Rivera") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I.  PROCEDURAL HISTORY

Rivera protectively filed an application for a Period of Disability and Disability Insurance benefits around June 25, 2012. (Tr. 157-58).  Plaintiff alleged he became disabled on June 23, 2010 due to suffering from lower back problems, a herniated disc, broken tailbone, right knee problems, and anxiety. (Tr. 196).  The Social Security Administration denied Plaintiff's application on initial review and upon reconsideration. (Tr. 87-95, 97-103).

At Plaintiff's request, administrative law judge ("ALJ") Ben Barnett convened an administrative hearing on July 25, 2012 to evaluate his application. (Tr. 40-82, 105).  Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*).  A vocational expert ("VE"), Mark Anderson, also appeared and testified. (*Id.*).

On September 14, 2012, the ALJ issued an unfavorable decision, finding Rivera was not disabled. (Tr. 16-32).  After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id.*).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 9-10).  The Appeals Council denied the request for review, making the ALJ's

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)   If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2)   If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)   If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)   If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)   Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

September 14, 2012 determination the final decision of the Commissioner. (Tr. 1-6).  Plaintiff

now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  EVIDENCE

### A.  Personal Background Information

Plaintiff was born on March 10, 1957, and was 37 years old on the date the ALJ rendered

his decision (Tr. 48), making him a "younger person" for Social Security purposes. 20 C.F.R. §

404.1563(c).  He completed high school and has past relevant work as a grinder, landscape

worker, laborer, and mold filler. (Tr. 48, 73-74).  Plaintiff testified that he last worked on June

26, 2010, having been laid off with a number of other employees. (Tr. 64).

### B.  Medical Evidence

Plaintiff's medical history shows treatment for low back pain and other physical

symptoms.  A July 2009 MRI showed disc desiccation and degenerative changes in the lower

lumbar spine.  (Tr. 284).  There was small disc protrusion at L5-S1, without significant

compression or displacement of the nerve roots. (*Id.*).

On July 1, 2010, Plaintiff treated with Jennifer Calabrese, M.D., his primary care

physician, for right leg and knee pain. (Tr. 331).  Dr. Calabrese observed paraspinal lumbar

tenderness and midline tenderness upon physical examination. There was weakness with flexion

and extension on the right knee.  Dr. Calabrese consulted a neurosurgeon, who agreed an MRI

was necessary to determine whether there was worsening of Rivera's protruding disc and nerve

root impingement.  If such was the case, surgery could be considered. (Tr. 331-32).

As compared to the 2009 MRI, a July 2010 MRI revealed that the overall appearance of

Rivera's lumbar spine was stable. (Tr. 287).  There was minimal disc bulging at L4-5 and broad-

based disc protrusion at L5-S1, just to the right of the midline.  However, the appearance at L5-S1 was unchanged from previous imaging, and the left L5 nerve root was not displaced. (*Id.*).

On July 28, 2010, Rivera presented to Parshotam Gupta, M.D., complaining of low back pain going to the outer side of the right leg and foot. (Tr. 262).  Rivera stated that in June of 2010, he was working as a machine operator and lifting 100 pounds, which might have resulted in injury. (*Id.*).  Upon physical examination, Plaintiff walked with a limp favoring the right leg.  He was able to stand on his toes, but not heels.  Rivera's strength in the upper and lower extremities was normal, except the right extremity was "4" out of "5."  There was some weakness in the quadriceps and ankle.  Plaintiff's reflexes were "1" out of "4" in the knees and absent in the ankles.  The lumbar spine was aligned and curvature normal, with severe tenderness in the lower part of the lumbar spine, but no muscle spasms.  Plaintiff's lumbar spine range of motion was limited and painful, but otherwise, range of motion was well-preserved and pain free. (*Id.*).  Rivera's straight leg raise was positive on the right and negative on the left. (Tr. 263).

Dr. Gupta also reviewed Plaintiff's recent MRI, which showed "very minimal" degenerative disc disease and a protruded disc, which was not pressing any nerve.  Dr. Gupta diagnosed facet joint arthropathy at L5-S1, degenerative disc disease causing mild spinal stenosis at L5-S1, and L5 radiculopathy on the left side.  He prescribed Ultram, Zanaflex, and Naprosyn, and advised Plaintiff to stay active and not go on bed rest.  Additionally, the doctor ordered an EMG, because Plaintiff's MRI did not show abnormalities of a significant nature as compared to his symptoms. (*Id.*).  The August 2010 EMG showed no evidence of lower extremity radiculopathy or plexopathy.  (Tr. 285).

On August 20, 2010, Plaintiff followed up with Dr. Gupta. (Tr. 260).  Rivera complained of low back pain going into his foot.  Dr. Gupta observed that the EMG was normal, Plaintiff's

most recent MRI had minimal changes, and Rivera tested positive for marijuana.  During a physical examination, there was tenderness in the lumbar spine and Plaintiff complained of pain in all directions.  Nonetheless, his range of motion was normal, as were strength and reflexes. Rivera's straight leg raise was also negative.  Dr. Gupta prescribed Ultram and Zanaflex, but because Rivera tested positive for marijuana, the doctor refused to prescribe narcotics or a break from work. (*Id.*).

On August 23, 2010, Rivera presented to Dr. Calabrese and reported that he did not take Ultram as prescribed, because it made him drowsy. (Tr. 329).  He had full strength in upper and lower extremities, and a slightly antalgic gate.  Dr. Calabrese prescribed Zoloft for depression, a prednisone taper, and recommended follow up in two months. (*Id.*).

Domingo Gonzales, M.D., examined Plaintiff on September 15, 2010, to render a surgical opinion. (Tr. 226-67).  Rivera explained that he first experienced problems with his lumbar spine three years prior, but in June of this year, the condition became severe and he began walking with a cane. (Tr. 266).    Upon physical examination, Plaintiff was limping, favoring the left lower extremity.  Touching the surface of the skin in the lumbar region caused severe pain in the lumbar area and right lower extremity. Rivera was unable to do any bending or hyperextending. His straight leg raise was positive on the right. (*Id.*).  Strength, however, was normal in all four extremities, as were senses. (Tr. 267).  Dr. Gonzales opined that the changes on the MRI at L5-S1 did not justify the amount of pain Plaintiff complained of.  The doctor felt that Rivera had a very low threshold for pain, likely associated with personality disorder, and that surgery was not appropriate.   Given Plaintiff's prior drug test, Dr. Gonzales did not prescribe narcotics, but referred Rivera for further pain management. (*Id.*).

Plaintiff first attended pain management with Bharat Shah, M.D., on October 25, 2010. (Tr. 288-92).   A physical examination revealed flexion and extension of Rivera's lumbar spine was limited, straight leg testing on the right was painful, and there was facet tenderness in the lumbar spine. (Tr. 290).   Muscle strength was "4" out of "5" in all extremities. (Tr. 291).   Dr. Shah prescribed an epidural steroid injection and medication. (Tr. 292).

On November 14, 2010, state agency physician Esberdado Villanueva, M.D., reviewed the medical record. (Tr. 300-07).   Dr. Villanueva opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; sit, stand, or walk six hours in an eight hour workday; and was unlimited in pushing or pulling. (Tr. 301).   Plaintiff could frequently climb ramps and stairs, balance, and stoop. (Tr. 302).   He could occasionally climb ladders, ropes, or scaffolds, kneel, crouch, or crawl. (*Id.*).

Plaintiff underwent an epidural injection in January 2011. (Tr. 345, 348).   In February 2011, Rivera reported to Dr. Shah that his low back was feeling slightly better, as was the pain in his right hip, though he was experiencing new intermittent left leg pain. (Tr. 361).   Dr. Shah recommended an epidural injection. (Tr. 365).

Plaintiff presented to the emergency department in March 2011, due to an exacerbation of back pain. (Tr. 380).   He was prescribed Ultram and Prednisone, and instructed to follow up with pain management. (Tr. 387).

On April 4, 2011, state agency physician William Bolz, M.D., conducted a review of the updated record. (Tr. 370-77).   He opined that Plaintiff could occasionally lift 20 pounds; frequently lift ten pounds; and sit, stand, or walk six hours in an eight hour work day. (Tr. 371). Dr. Bolz limited Plaintiff to occasional climbing, stooping, kneeling, crouching, and crawling.

(Tr. 372).  Additionally, the doctor opined that Rivera was limited to frequent bilateral overhead reaching due to his herniated disc, but suffered from no other manipulative restrictions. (Tr. 373).

During October 2011, Rivera complained of an increase in lumbar and right hip pain to Dr. Shah. (Tr. 429).  A physical examination showed facet tenderness in the lumbar spine, limited flexion, and a positive straight leg raise on the right. (Tr. 430).  Dr. Shah recommended an epidural injection, because such had helped relieve Rivera's pain in the past.  (Tr. 433).  Dr. Shah ordered an MRI to determine if Plaintiff was a candidate for disc decompression surgery. (*Id.*).  A November 1, 2011, MRI showed broad-based disc protrusion at L5-S1 on the right side of the midline, which was slightly increased in size as compared to the 2010 imaging. (Tr. 400). There was no significant compression or displacement of the nerve roots. (*Id.*).

On December 10, 2011, Plaintiff presented to neurologist Mario Sertich, M.D., for a surgical consultation. (Tr. 445).  Dr. Sertich performed a physical examination which showed that Plaintiff ambulated without difficulty, though he had a limited range of motion in flexion and extension.  There was tenderness over the low back, but strength and senses were intact. Though Rivera's reflexes were hypoactive, they were symmetrical, and straight leg raising tests were negative.  Dr. Sertich recounted that Plaintiff had well-documented degenerative disc disease at L5-S1 and some degeneration at L4-5.  Though Plaintiff complained of bilateral sciatica, clinically he had no significant deficit.  As a result, the doctor recommended conservative treatment, such as Naproxen twice daily, exercise, a back brace, and a TENs stimulator. (*Id.*).

On June 22, 2012, Rivera underwent a functional capacity evaluation with a physical therapist, who opined that Rivera was unable to work. (Tr. 469-73).  The therapist noted that Plaintiff scored 100 percent on the initial pain questionnaire, but the validity of his effort during

7

the examination was questionable. (Tr. 473).   The therapist pointed to inconsistencies with regard to grip, strength testing, and trunk range of motion. (*Id.*).

On June 26, 2012, Plaintiff had a check-up with Dr. Calabrese. (Tr. 478).   Rivera displayed an antalgic gait while walking with a cane and had pain on the right when straight leg raising. (Tr. 479).   She diagnosed L4-L5 disc bulge, chronic pain, hypertension, depression, and anxiety. (*Id.*).

On July 13, 2012, Dr. Calabrese completed a physical residual functional capacity ("RFC") form. (Tr. 475-76).   She opined that Plaintiff could lift less than ten pounds frequently or occasionally; stand, sit, or walk, for less than two hours in an eight hour day; required a sit-stand option; and would need to lie down at times during a work shift. (Tr. 475).   The doctor supported these limitations by explaining that Rivera had a bulging disc at L4-L5, which caused multiple pain and radiculopathy symptoms and required medication therapy that may make him drowsy. (Tr. 476).   Dr. Calabrese also opined that because of the disc bulge, Plaintiff could never reach, handle, finger, feel, push, or pull. (*Id.*).

On July 23, 2012, Dr. Shah also filled out a physical RFC form. (Tr. 485-86).   Dr. Shah opined that Plaintiff could lift less than ten pounds frequently or occasionally; stand, sit, or walk, for less than two hours in an eight hour day; required a sit-stand option; and would need to lie down at times during a work shift. (Tr. 485).   He based his opinion on the severity of Plaintiff's condition and pain, and the results of the functional capacity examination performed on June 22, 2012. (*Id.*).   Dr. Shah concluded that Plaintiff could reach less than occasionally, handle occasionally, finger and feel without limitation, and push or pull less than occasionally. (Tr. 486).   The doctor pointed to the June 2012 functional capacity examination, an MRI, and

8

physical findings in support of these recommendations. Dr. Shah indicated that Rivera would miss work more than three times per month. (*Id.*).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since June 23, 2010, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease and herniated lumbar disc; major depressive disorder; borderline intellectual functioning; right knee and tailbone impairments.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; occasional stooping, kneeling, crouching and crawling; frequent bilateral overhead reaching; limited to simple routine repetitive tasks; occasional changes in the work setting; no production rate or pace work.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on March 10, 1975 and was 35 years old, which is defined as an younger individual age 18-44, on the alleged onset date.

8. The claimant has at least a high school education and is able to communicate in English.

   . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 23, 2010, through the date of this decision.

(Tr. 19-32) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence

10

in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff maintains that the ALJ violated the mandates of the treating source rule when evaluating opinions issued by Drs. Shah and Calabrese.  He asserts that the ALJ erred in failing to accord great weight to the physicians and failed to articulate good reasons for not according substantial deference to these doctors' recommendations.  The Court will address the ALJ's treatment of both medical sources in turn.

When assessing the medical evidence contained within a claimant's file, it is well-established that an ALJ must give special attention to the findings of the claimant's treating source.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 404.1527(c)(2).  Under the Social Security Regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).

The treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or are inconsistent with the other substantial evidence in the record.  *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table).  When the treating physician's opinions are not entitled to controlling weight, the ALJ should apply specific factors to determine how much weight to give the opinion.  *Wilson*, 378 F.3d at 544, *see* 20 C.F.R. § 404.1527(c)(2)-(6).  The

regulations also advise the ALJ to provide "good reasons" for the weight accorded to the treating source's opinion. 20 C.F.R. § 404.1527(c).  Regardless of how much weight is assigned to the treating physician's opinions, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (*citing King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

**A. Dr. Shah**

Rivera began pain management treatment with Dr. Shah in October 2010. (Tr. 288).  In July of 2012, Dr. Shah completed a physical RFC form, opining that Plaintiff suffered from serious functional limitations. (Tr. 485-86).  For example, Dr. Shah concluded that Rivera could sit for less than two hours in an eight hour work day and would need to lie down at unpredictable intervals. (Tr. 485).  The parties do not contest Dr. Shah's status as a "treating physician."

When making the disability determination, the ALJ attributed "little weight" to Dr. Shah's RFC opinion. (Tr. 30).  Upon review, the undersigned finds that the ALJ provided good reasons for granting less than controlling weigh to the doctor's opinion.

To begin, the ALJ observed that Dr. Shah based his opinion on evidence which was unreliable.  More specifically, the ALJ explained that Dr. Shah bolstered his recommendation, in part, on the results of a functional examination performed in June 2012. (Tr. 30, 469-73).  As the ALJ noted earlier in his opinion, the accuracy of the functional examination was dubious. (Tr. 26, 28).  The physical therapist who performed the examination questioned Rivera's effort during grip and pinch testing. (Tr. 26, 470).  Additionally, the therapist highlighted inconsistencies with regard to grip, strength testing, and trunk range of motion. (Tr. 29, 473).  As a result, the ALJ reasonably questioned Dr. Shah's opinion, which relied upon the functional capacity examination.

12

Additionally, Dr. Shah based his opinion on the results of MRIs and physical examinations contained in the record. (Tr. 30).  It was not per se inappropriate for the doctor to rely on such when formulating his opinion.  However, in Rivera's case, the results of MRIs and physical examinations were inconsistent with the extent of limitations Dr. Shah recommended. (*Id.*).  As the ALJ indicated, imaging revealed no nerve impingement and physical exams showed generally moderate limitations. (*Id.*). The ALJ reasonably devalued Dr. Shah's opinion on this basis.  Rivera's MRIs consistently showed no nerve root impingement.  Dr. Gupta noted that Plaintiff's 2010 MRI did not show abnormalities of a significant nature, and further imaging, in the form of an EMG, was normal. (Tr. 260, 263).  Dr. Gonzales also opined that Plaintiff's 2010 MRI did not support the severity of symptoms Plaintiff described and warranted only continued pain management (Tr. 267).  A November 2011 MRI showed a slight increase in disc protrusion, but no significant compression or displacement of the nerve roots. (Tr. 400).  In regard to physical examinations, some examinations showed some notable findings, such as tenderness or an antalgic gait, but the results of such tests overall were not demonstrative of serious limitations.  For instance, during August 2010, Dr. Gupta found Rivera's straight leg raise tests were negative, and his muscle strength, reflexes, and range of motion were normal. (Tr. 25, 260).  A physical examination performed in December 2011, showed that Plaintiff ambulated without difficulty, straight leg raising was negative, and strength and senses were intact. (Tr. 26, 445).  Such findings undermined the severity of the limitations Dr. Shah recommended.

Finally, the ALJ gave less weight to Dr. Shah because the doctor, and other physicians, recommended essentially routine or conservative treatment. (Tr. 30).  Plaintiff was never found to be a candidate for surgery. (*Id.*).  Such observations were also appropriate to devalue the

13

doctor's opinion, and are supported by the record.  The ALJ specifically pointed to neurologist Dr. Sertich's December 2011 recommendation that Plaintiff continue conservative treatment. (Tr. 30, 445).  Additionally, in September 2010, Dr. Gonzales examined Plaintiff and imaging of the lumbar spine to conclude that surgery was not appropriate. (Tr. 25, 226-27).  Rivera's physicians took a conservative approach, prescribing medication and exercise.  Though Dr. Sertich also proposed a back brace or TENs unit, it does not appear that Plaintiff pursued the recommendation.  The conservative course of Plaintiff's treatment does not support Dr. Shah's serious limitations.  Accordingly, Plaintiff's allegation of error is not well-taken.

### B.  Dr. Calabrese

Dr. Calabrese served as Plaintiff's primary care physician, and the record reflects that Plaintiff treated with the physician for his back pain as early as July 2010. (Tr. 331).  The doctor saw Rivera on approximately two occasions more before completing an RFC form in July 2012. (Tr. 329, 478, 475-76).  The ALJ's opinion incorrectly states that Dr. Calabrese examined Plaintiff on only one occasion before authoring her July 2012 opinion. (Tr. 30).  As a result, it appears that the ALJ did not regard Dr. Calabrese as a "treating source."  The Commissioner does not contest Dr. Calabrese's status as a treating physician, and the Court will assume, without deciding, that Dr. Calabrese's treatment relationship qualified her as such.

Usually, violations of the treating source doctrine warrant remand. *See Wilson*, 378 F.3d at 546-47.  However, the Sixth Circuit has recognized circumstances under which the ALJ's failure to provide "good reasons" may be deemed harmless. *Id.* at 547.  There are three such instances which were explicitly addressed by the Sixth Circuit: (1) where the treating source's opinion was "so patently deficient that the Commissioner could not possibly credit it"; (2) where the ALJ adopts findings consistent with the treating source's opinion; or (3) where the ALJ has

met the procedural safeguard of providing good reasons, even though he has not complied with the terms of the regulation. *Id.*

In the case *sub judice*, the ALJ's error was harmless because the ALJ's decision met the intended goal of the treating source doctrine. Despite the ALJ's mistake regarding the nature of Dr. Calabrese's treatment relationship with Rivera, the ALJ stated that he accorded "little weight" to the doctor's opinion and otherwise provided good reasons for doing so. (Tr. 30).

The ALJ explained that the serious limitations Dr. Calabrese's recommended were inconsistent with and unsupported by the evidence of record. (*Id.*). Dr. Calabrese based her opinion on bulging discs that caused pain and radiculopathy symptoms. (Tr. 476). The ALJ acknowledged that imaging revealed disc bulge, but significant compression and nerve displacement were not present. (Tr. 30). Multiple physicians of record recounted the lack of significant findings on imaging tests, commenting that the images did not support the extent of symptoms Plaintiff described nor did they justify more than conservative treatment. The ALJ also stated that Dr. Calabrese herself never recommended treatment beyond conservative measures, which undermined her RFC opinion that Plaintiff was disabled. (*Id.*). Such reasoning was sufficient to support the ALJ's attribution of little weight to Dr. Calabrese's opinion.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

                                        s/ Kenneth S. McHargh
                                        Kenneth S. McHargh
                                        United States Magistrate Judge


Date:  August 29, 2014.

15